JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Holly Lloyd

**DEFENDANTS**
Covanta Plymouth Renewable Energy, LLC

**(b)** County of Residence of First Listed Plaintiff    Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin Riechelson, Esquire - Kamensky, Cohen & Riechelson
194 South Broad Street - Trenton, NJ 08608

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government    Plaintiff

☐ 3   Federal Question     *(U.S. Government Not a Party)*

☐ 2   U.S. Government    Defendant

☒ 4   Diversity     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332 (a)(1)
Brief description of cause:
Class Action - Odor/Trespass

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE             DOCKET NUMBER

DATE           SIGNATURE OF ATTORNEY OF RECORD
*K. Riechelson*

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HOLLY LLOYD, on behalf of herself and all )
others similarly situated, )
 )
Plaintiff, )
 ) Case No.
vs. )
 )
COVANTA PLYMOUTH RENEWABLE )
ENERGY, LLC, )
 )
Defendant. )
 )
 )
 )
 )

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff brings this class action against Covanta Plymouth Renewable Energy, LLC. ("Defendant") for the operation of its incinerator located at 1155 Conshohocken Road in Conshohocken, Pennsylvania (the "facility").

2. Defendant's facility is surrounded by private, residential properties.

3. Through the facility's operation, maintenance, and design Defendant releases noxious odors and air contaminants onto the private properties of Plaintiff and the Class, causing property damage through nuisance and negligence.

### THE PARTIES

4. Plaintiff Holly Lloyd does reside, and at all times relevant hereto has resided, at 505 Hillcrest Road, Conshohocken, PA 19428.

1

5.      Defendant's facility is located at 1155 Conshohocken Rd., Conshohocken, Pennsylvania, 19428.  Defendant is a Delaware corporation with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

6.      Plaintiff is a citizen of Pennsylvania.

7.      Defendant is a citizen of Delaware and New Jersey.

8.      This Court has CAFA jurisdiction under 28 U.S.C. § 1332(d)(2)(a). The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

9.      Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and because much, if not all, of the property that is the subject of this action is situated in this District.

10.      Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

## FACTUAL ALLEGATIONS

9.      Defendant owns and operates a commercial municipal waste incinerator that processes approximately 1,216 tons per day of municipal solid waste, which it converts into energy and sells for a profit.

10.      Defendant, its predecessors, and/or its agents either constructed or directed the construction of the facility and Defendant exercises control and ownership over the facility.

11.      The facility receives and stores substantial quantities of household waste at its facility, which Defendant processes into refuse-derived fuel.

2

12.     Defendant's facility includes a municipal waste storage pit, an auxiliary fuel storage tank, two Municipal Waste Incinerators (MWIs), two auxiliary burners, and certain emission control equipment.

13.     Defendant is under a duty to maintain its combustion chamber at a temperature at or greater than 1800°F in order to ensure proper combustion and control damaging emissions.

14.     Defendant relies on certain emission control processes, including a Selective Non-Catalytic Reduction (SNCR) system designed to reduce nitrous oxide (NOx) emissions, acid gas scrubbers to control acid gases, a PAC injection carbon absorption process to control emission of toxic pollutants, and a baghouse to control particulate matter emissions.

15.     There are emission stacks for each MWI, through which Defendant releases its waste byproducts into the ambient air.

16.     The raw materials and chemicals utilized by Defendant are noxious and highly odiferous, and its processing operations create a foreseeable risk that noxious odor emissions could be emitted into surrounding residential communities if reasonable steps are not taken to mitigate and control them.

17.     A properly operated, maintained, and/or constructed municipal waste incinerator, will not emit noxious odors into the surrounding residential areas.

18.     Defendant's emission control processes are inadequate and improperly maintained and operated and fail to prevent noxious offsite odors from invading nearby private, residential properties.

19.     Defendant has failed to properly construct, operate, and maintain its facility to prevent causing offensive offsite odor impacts, despite knowledge that their facility has repeatedly emitted noxious fugitive emissions into the ambient air.

3

20.     On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiff's property including Plaintiff's neighborhood, residence, and outdoor spaces have been and continue to be physically invaded by noxious odors.

21.     The noxious odors which entered Plaintiff's property originated from, and were caused by, Defendant's facility.

22.     Defendant's facility and its noxious emissions have been the subject of frequent complaints from residents in the nearby residential area.

23.     More than 30 area residents have submitted written statements to Plaintiff's counsel detailing the impact Defendant's odorous emissions have had on their lives and their ability to use and enjoy their homes and properties.

24.     Plaintiff Holly Lloyd reported persistent noxious odors that frequently interfere with the use and enjoyment of her property, including the ability to use her yard.

25.     Below is a very small sampling of the factual allegations made by putative class members to Plaintiff's Counsel, demonstrating that Defendant's facility is the source and cause of the odor and air pollutant emissions, which have damaged their neighboring private residential properties within the Class Area.

     a.     Carl Augustine reported on August 3, 2020 that "[o]dors are so offensive that you cannot breathe, open windows, or go outside."

     b.     Peter and Joanne D'Alessandro reported on February 13, 2020 that because of the smell they are "unable to sit on patio or porch at times."

     c.     Gina Folds reported on January 21, 2020 that Defendant's odors force her "to close the windows & turn on the A/C. I also am not able to enjoy the front porch or back patio. I also may not walk the dog on smelly days. Worry about resale value."

4

d.   Travis Manson and Stephanie Daniel reported on January 27, 2020 that they are prevented from going "outside on deck or driveway." They frequently have to keep their windows closed at times because of Defendant's odors.

e.   Wayne Masters reported on January 29, 2020 that he has been prevented from going "out to play with my great granddaughter, also can not barbecue outside with family members."

f.   Hayden McCall reported on February 14, 2020 that because of the odors, "[e]ntertaining outside just hasn't been possible. Opening windows isn't possible."

26.   The unreasonable malodors released into public spaces and the neighboring residential area have prompted numerous residents to complain to governmental entities, including the Borough of Conshohocken, Plymouth Township, and the Pennsylvania Department of Environmental Protection ("DEP"). These complaints illustrate the depth to which Defendant's pervasive and offensive odors have interfered with the lives of private residential property owners throughout the Class Area. These complaints include the following:

a.   On December 30, 2018, the DEP and emergency personnel for Plymouth Township, among others, were alerted of substantial amounts of steam and noise coming from the facility. The DEP's report noted that neighboring residents reported "a burning plastic smell[.]" It was reported to the DEP that "the building [was] 'smoked out.'"

b.   On January 3, 2019, numerous complaints by nearby residents to the DEC reported "a terrible burning plastic smell in the entire area."

c.   On June 11, 2019, the DEP and the Borough of Conshohocken received, and attributed numerous malodor complaints to Defendant.

5

d.     On October 15, 2019 through October 19, 2019, the DEP received numerous citizen odor complaints regarding Defendant's facility. The overwhelming number of complaints related to the "smell of burning plastic."

e.     On June 15, 2020 at approximately 7:30 a.m., Defendant's facility experienced a power failure that caused both incinerator units and all of its air pollution control devices to become non-operational, and uncontrolled air pollution and fugitive emissions were spewed into surrounding residential neighborhoods. At 9:35 a.m. on the same day, Defendant again experienced an electrical failure that shut down the facility and all its air pollution control devices.  Numerous local residents complained to the DEP regarding noxious odors invading their properties.  The DEP verified numerous violations resulting from Defendant's malfunction, which constituted "unlawful conduct and a public nuisance."

f.     Between June 10, 2019 and January 4, 2020, the DEP received at least 163 citizen complaints regarding Defendant's facility. The complaints overwhelmingly relate to noxious odors.

g.     Additional odor complaints have been made to the DEP throughout 2020, which the DEC characterized as "ongoing issues" relating to Defendant's facility.

27.     Defendant's well-documented pattern of failing to control its emission of noxious odor emissions is further demonstrated by the following:

a.     Numerous Notices of Violations ("NOV") issued by the DEP after confirming unlawful offsite odor emissions and regulatory violations relating to odor emissions. These Notices of Violations include, but are not limited to, NOVs dated October 17, 2019; October 24, 2019; December 23, 2019; and June 24, 2020.

b.     Numerous media reports regarding Defendant's "burning plastic" and other foul odors.

c.     A citizen Facebook Group with at least 797 members entitled "Covanta Plymouth Trash Incinerator – Community Information and Action."

d.     A June 23, 2020 letter to the DEP, signed by at least 42 local residents, demanding voluntary cessation of Defendant's operations or denial of Defendant's 2022 application for permit renewal.

28.     Despite clear knowledge of its odor emission problem, Defendant repeatedly continued to frequently emit severe fugitive off-side noxious odors into the ambient air outside its property.

29.     The foul odors emitted from the facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities and have caused physical property damages.

30.     Plaintiff's property has been and continues to be physically invaded by noxious odors that have interfered with the use and enjoyment of that property, resulting in damages.

31.     The invasion of Plaintiff's property and that of the Class by noxious odors has deprived Plaintiff of the full value of her property and/or reduced the value of that property, resulting in damages.

32.     The Class Area and Montgomery County are home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, parks, and education.

33.     Plaintiff and the Class are a limited subset of individuals in Montgomery County and the Class Area that includes only owner/occupants and renters of residential property who live

7

within the Class Area and fit within the Class Definition. Plaintiff and the putative class are not coterminous with the general public.

34.     Members of the public in the Class Area and Montgomery County, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished private property values, deprivation of the full value of Plaintiff's private property, and/or loss of use and enjoyment of their private property.

35.     Plaintiff and the Class have suffered damages different in kind that are not suffered by the public at large because their injury is an injury to private property.

36.     The odors caused by Defendant's facility have been and continue to be dispersed across public and private land throughout the Class Area.

37.     Defendant negligently, knowingly, intentionally, and recklessly failed to properly design, operate, repair, and/or maintain the facility and its associated operations, thereby causing the unreasonable invasion of Plaintiff's property by noxious odors on unusually severe, frequent, intermittent, and ongoing recurring occasions.

## CLASS ALLEGATIONS

### A.  Definition of the Class

38.     Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23.  Plaintiff seeks to represent a Class of persons preliminarily defined as:

> *All owner/occupants and renters of residential property within a 1.5 mile radius of the Covanta Plymouth Renewable Energy Facility.*

Excluded from this Class are Defendant and its affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons. The proposed class boundary is subject to modification as discovery progresses. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

**B. Numerosity**

39.     Upon information and belief, there are in excess of 7,900 households within a 1.5 mile radius of the Facility. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

40.     Prosecution of separate lawsuits by Class members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is therefore appropriate.

**C. Commonality**

41.     Defendant has engaged in a uniform and common course of misconduct towards members of the Class, giving rise to questions of both law and fact common to all Class members, including but not limited to:

  a.     Whether and how Defendant intentionally, knowingly, negligently, and/or recklessly failed to construct, maintain, operate, and/or design the facility;

  b.     Whether Defendant owed any duties to Plaintiff;

  c.     Which duties Defendant owed to Plaintiff;

  d.     The way in which the facility's odors were dispersed over the proposed Class Area;

  e.     Which steps Defendant has and has not taken in order to control its emissions through the maintenance and/or operation of its facility;

  f.     Whether it was reasonably foreseeable that Defendant's failure to properly

9

maintain, operate, and/or construct the facility would result in an invasion of Plaintiff's property interests;

g.     Whether the degree of harm suffered by Plaintiff and the class constitutes a substantial annoyance or interference; and

h.     The proper measure of damages incurred by Plaintiff and the Class.

## D.  Typicality

42.     Plaintiff has the same interest in this matter as all other members of the Class, and his claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories, and seek the same type of relief.

43.     The claims of Plaintiff and the other Class members have a common origin and share a common basis.  The claims originate from the same failures of the Defendant to properly design, maintain, operate, and/or construct the facility.

44.     All Class members have suffered injury in fact as a result of the invasion of their properties by noxious odors and air particulates emitted by Defendant.  The noxious odors and air particulates emitted by Defendant, interferes with their ability to use and enjoy their homes and has impacted property values.

## E.  Adequacy of Representation

45.     Plaintiff's claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiff as representatives of the Class.  Plaintiff will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

46.     Plaintiff has retained the services of counsel who are experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by industrial emissions. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and all absent Class members.

**F. Class Treatment Is The Superior Method of Adjudication**

47.     A class action is superior to other methods of litigation and will provide a fair and efficient method for adjudication of the controversy because:

a.  Individual claims by the Class members would be impracticable as the costs of pursuit would far exceed what any one Class member has at stake;

b.  Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c.  The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

d.  The proposed class action is manageable.

**CAUSE OF ACTION I**

**PRIVATE NUISANCE**

48.     Plaintiff restates the allegations set forth in this Complaint as if fully restated herein.

49.     Defendant owed and continues to owe a duty to Plaintiff and the Class, who are neighboring private property holders, to prevent and abate the interference with, and the invasion of, their private property interests.

11

50.     The noxious odors, pollutants, or air contaminants which entered Plaintiff's property originated from the facility constructed, designed, maintained, and/or operated by Defendant.

51.     The odors, pollutants, and/or air contaminants invading Plaintiff's property are indecent and/or offensive to the senses, and obstruct the free use of their property so as to significantly and unreasonably interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways:

a.      Causing Plaintiff and the Class to remain inside their homes and forego use of their yards, porches, and other outdoor spaces and refrain from outdoor activities;

b.      Causing Plaintiff and the Class to keep doors and windows closed when weather conditions otherwise would not require them to do so;

c.      Depriving Plaintiff and the Class of the full value of their homes and properties;

d.      Causing Plaintiff and the Class embarrassment, inconvenience, and reluctance to engage in outdoor activities and invite guests to their homes.

52.     Defendant's emission of odors, pollutants, and air contaminates is proscribed by municipal and Pennsylvania Law, which Defendant has been cited numerous times for violating.

53.     The odors, pollutants, and air contaminants produced by Defendant's facility are severe and continuous in nature and have a long-lasting effect.

54.     Defendant is aware of the odors, pollutants, and air contaminates that emanate from its facility and has knowledge of the significant impacts the odors have on residents' lives, yet has failed to abate or correct the conditions causing the nuisance odors.

55.     Plaintiff and the Class have suffered physical damage to property as a result of Defendant's nuisance odor emissions, including interference with use and enjoyment of property,

deprivation of full value of property, diminution of property value, and embarrassment, annoyance, and inconvenience as alleged herein.

56.     Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiff and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the use and value of their properties.

## CAUSE OF ACTION II

## PUBLIC NUISANCE

57.     Plaintiff restates the allegations set forth in this Complaint as if fully restated herein.

58.     Plaintiff and the Class utilized their property as a residence and reside within the Class Area.

59.     The noxious odors which entered Plaintiff's property originated from Defendant's Facility.

60.     The unreasonable odors caused by Defendant's facility have been and continue to be dispersed across public and private land throughout the Class Area.

61.     By failing to reasonably design, operate, repair, and maintain its Facility, Defendant has caused an invasion of Plaintiff's property by noxious odors on unusually frequent occasions that are too numerous to individually list herein.

62.     The noxious fumes and odors invading Plaintiff's property are indecent and offensive to Plaintiff and the Class, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiff's property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

63.     Defendant knew that it was emitting noxious odors onto neighboring properties, yet it failed to take reasonably adequate steps to abate the nuisance.

64.     Defendant owed and continues to owe a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

65.     Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and spaces by emitting noxious pollutants into the ambient air.

66.     Defendant, by failing to reasonably repair, operate, and/or maintain its facility so as to abate nuisances such as malodorous emissions, has acted, and continues to act, intentionally, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

67.     As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiff and the Class suffered damages to their property as alleged herein.

68.     By causing noxious odors that physically invaded Plaintiff's property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiff and the Class' use and enjoyment of their property on unusually frequent occasions too numerous to mention individually.

69.     Such substantial and unreasonable interference includes, but is not limited to:

    a.     loss of use and ability to enjoy the outside areas of Plaintiff's property or to open windows due to the presence of noxious odors;

    b.     decrease in the value of Plaintiff and the Class' properties and depriving them of the full value of their properties; and

    c.     annoyance, inconvenience, and discomfort, including but not limited to, inability to open windows when odors are present, inability to use outdoor

14

spaces, and the inability to invite guests to Plaintiff's residence due to the embarrassment and annoyance of the noxious odors invade Plaintiff's property.

70.     Apart from the private property damage incurred by Plaintiff and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

71.     Plaintiff suffered and continues to suffer special harm to private property interests, including interference with the use and enjoyment of private land and private property, deprivation of full value of private property, and decreased property values.  These damages are of a different kind and are additional to damages suffered by the public at-large exercising the same common right to breathe uncontaminated and unpolluted air.

72.     Plaintiff did not consent to noxious odors entering upon her property.

73.     Whatever social utility provided by the Facility is clearly outweighed by the harm suffered by Plaintiff and the putative class, who have on unusually frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

74.     Defendant's substantial and unreasonable interferences with Plaintiff's property rights constitutes a nuisance for which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION III

## <u>NEGLIGENCE</u>

75.     Plaintiff restates the allegations set forth in this Complaint as if fully rewritten herein.

15

76.     On occasions too numerous to mention individually, Defendant negligently and improperly designed, operated, repaired, and/or maintained its Facility and its operations, causing fugitive odor emissions to escape into the ambient air and invade Plaintiff's home, land, and property.

77.     Defendant owed Plaintiff and the Class, as neighboring landowners, a duty of care with regard to its operation and maintenance of the Facility.

78.     As a direct, proximate, and foreseeable result of Defendant's negligence in designing, operating, and maintaining the Facility, Plaintiff's property, on occasions too numerous to mention, was physically invaded by noxious odors.

79.     As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiff suffered damages to their property as alleged herein.  Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiff's property, loss of the full value of Plaintiff's property, and diminution in the value of Plaintiff's property.

80.     By failing to properly design, operate and/or maintain its Facility, and its concomitant operations and processes, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade Plaintiff's property.

81.     By failing to design, maintain and operate its Facility, and its concomitant operations and processes, Defendant has caused the invasion of Plaintiff's property by noxious odors.

82.     Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly designed, maintained and/or operated its Facility and knew or should have known upon reasonable inspection that such actions would—and did—cause Plaintiff's property to be invaded by noxious odors.

16

83.     Defendant's breaches of duty caused noxious odors generated at its facility to travel offsite onto neighboring properties. Such breaches of duty include, but are not limited to:

a) Defendant has failed to reasonably install, maintain, and operate its waste management systems including its incinerators, boilers, and turbine-generator;

b) Defendant has failed to adequately install, maintain, and operate odor and pollution prevention/control systems, including its flue gas scrubbers, individual selective non-catalytic reduction ("SNCR") systems, PAC injection equipment, continuous emissions monitoring systems, and other odor prevention and control systems which were available to Defendant;

c) Defendant has failed to adequately install, maintain, and operate systems to ensure proper and complete combustion of refuse to prevent numerous instances of untreated off-site emissions, including by failing to fully clear incinerator grates while its combustion chambers are dormant or in a reheating phase;

d) Defendant has failed to establish, maintain, and implement operational plans to prevent, or mitigate the effects of, repeated electrical malfunctions at its facility, which have caused massive quantities of untreated noxious emissions to invade surrounding public and private properties;

e) Defendant has failed to take reasonable steps to address the noxious odors that are the direct and proximate result of the negligent operation of its waste management systems;

    f)   Defendant has failed to consistently maintain its combustion chambers at a temperature at or greater than 1800°F in order to ensure proper combustion and control damaging emissions;

    g)   Defendant has failed to utilize adequate odor reduction and treatment practices in the receipt, processing, and/or covering of odiferous raw waste materials; and

    h)   Defendant has failed to utilize adequate operational practices and procedures to minimize and/or treat odors generated at its facility;

    i)   Defendant has failed to utilize other odor prevention, elimination, mitigation and control strategies and technologies available to Defendant;

    j)   And/or other failures revealed during discovery.

84.    As a direct and proximate result of the failures of Defendant to exercise ordinary care, Plaintiff's residences have been and continue to be physically invaded by noxious odors.

85.    After learning about its noxious emissions, Defendant has continued its failure to take reasonably adequate steps to abate the conditions, which cause damage to Plaintiff's property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A.    Certification of the proposed Class by order pursuant to Federal Rule of Civil Procedure 23;

B.    Designation of Plaintiff as representative of the proposed Class and designation of her counsel as Class Counsel;

C.    Judgment in favor of Plaintiff and the Class and against Defendant;

D.      An award, to Plaintiff and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E.      An Order holding that entrance of the aforementioned noxious odors upon Plaintiff's property constituted a nuisance;

F.      An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G.      Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

Dated: September 3, 2020

Respectfully submitted,

Kevin Riechelson
Attorney I.D. 58960
Kamensky, Cohen, & Riechelson
194 South Broad St.
Trenton, New Jersey 08608
(609) 394-8585
KRiechelson@kcrlawfirm.com


*Steven D. Liddle
*Nicholas A. Coulson
*Matthew Z. Robb
LIDDLE & DUBIN, P.C.
*Pro Hac Vice to be submitted
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@ldclassaction.com
ncoulson@ldclassaction.com

Attorneys for Plaintiff & the Putative Class

19

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 505 Hillcrest Road, Conshohocken, PA 19428 _____

Address of Defendant: _____ 1155 Conshohocken Road, Conshohocken, PA 19428 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 09/03/2020     _____     58960
                *Must sign here*
             *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   **Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
       *(Please specify):* _____

**B.**   **Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☑ Other Personal Injury *(Please specify):* Industrial Odor
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Kevin Riechelson, Esq. _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 09/03/2020     _____     58960
                *Sign here if applicable*
             *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

Holly Lloyd, on behalf of
herself + all others similarly
situated                                    :            CIVIL ACTION
                                      v.    :
                                            :
Covanta Plymouth Renewable Energy, LLC.     :            NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                  (X)

| 9-3-2020 | K Riechler | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 609-394-8585 | 609-394-8620 | Kriechelson @ KCRlawfirm.Com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2020

By: _____

KEVIN S. RIECHELSON

20