IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLY LLOYD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COVANTA PLYMOUTH RENEWABLE ENERGY, LLC | : | NO. 20-4330 |

<u>MEMORANDUM</u>

Bartle, J.                                        February  3, 2021

Plaintiff Holly Lloyd has sued defendant Covanta Plymouth Renewable Energy, LLC in this putative class action brought under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  Plaintiff alleges claims for private nuisance, public nuisance, and negligence.  These counts arise from defendant's operation of a waste-to-energy processing facility which plaintiff alleges emits noxious odors that invade her and other nearby residents' properties in and around Conshohocken, Pennsylvania.

Before the court is the partial motion of defendant to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, defendant moves to dismiss Count III for negligence, as well as claims for punitive damages.  As part of the same motion, defendant also seeks to strike the injunctive relief that plaintiff requests.

I.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)

(citing 5B Charles Allen Wright & Arthur R. Miller, Federal
Practice and Procedure § 1357 (3d ed. 2004)).

II.

For present purposes, the court accepts as true the
following allegations set forth in the complaint.  Plaintiff is
a citizen of Pennsylvania and resides in Conshohocken.
Defendant, a citizen of New Jersey and Delaware, owns and
operates a facility in Conshohocken which converts municipal
solid waste into energy.[1]  The facility processes approximately
1,200 tons of waste per day into fuel.  The facility includes a
municipal waste storage pit, an auxiliary fuel storage tank, two
municipal waste incinerators and emission stacks, and two
auxiliary burners.

Plaintiff contends that defendant does not properly
maintain its incinerators and systems so as to prevent the
release of noxious odors into the air.  As a result, the
offensive odors from defendant's facility have caused property
damage, specially the loss of the use and enjoyment of her
property as well as the diminution in its value.  Plaintiff also
references the statements of over thirty residents living near

---

1.   Plaintiff avers that this court has subject matter
jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) even if the
class action claims fail since the amount in controversy for her
claims exceeds $75,000, exclusive of interest and costs, and
there is diversity of citizenship between the parties.

defendant's facility regarding the adverse impact of defendant's facility on their lives and properties.

For instance, plaintiff avers that the odors have made her unable to use her yard.  Others in the putative class allege that: "odors are so offensive that you cannot breathe, open windows, or go outside;" residents are "unable to sit on patio or porch at times;" the odors force one person "to close the windows & turn on the A/C," and they interfere with her ability to "enjoy the front porch or back patio" or walk her dog "on smelly days;" the odors prevent others from sitting "outside on deck or driveway" and force them to keep their windows closed; another resident cannot "play with my great granddaughter" or "barbecue outside with family members;" and another cannot entertain outside or open windows.

Multiple residents have complained of the odors to various governmental entities, including the Borough of Conshohocken ("the Borough"), nearby Plymouth Township ("the Township"), and the Pennsylvania Department of Environmental Protection ("DEP").  One such instance occurred on December 30, 2018 when residents alerted the DEP and Township that there was a burning plastic smell and that the building was "smoked out." Residents also made complaints on January 3, 2019 to the DEP and Borough about "a terrible burning plastic smell in the entire

area," on June 11, 2019 for malodor, and again between October

15, 2019 and October 19, 2019 for a burning plastic smell.

After two power failures caused the incinerator units

and air pollution control devices to shut down on June 15, 2020,

residents complained to the DEP about uncontrolled air pollution

and noxious odors.  The DEP issued notices of violations to

defendant about unlawful offsite odor emissions and regulatory

violations on October 17, 2019, October 24, 2019, December 23,

2019, and June 24, 2020.

Plaintiff brings this action seeking certification of

the proposed class of "[a]ll owners/occupants and renters of

residential property within a 1.5 mile radius of the Covanta

Plymouth Renewable Energy Facility" pursuant to Rule 23 of the

Federal Rules of Civil Procedure.  Plaintiff also seeks

compensatory and punitive damages, attorneys' fees and costs, an

order holding that the noxious odors constitute a nuisance, and

injunctive relief consistent with state and federal regulatory

obligations.  Plaintiff does not seek any damages for personal

injury.

### III.

Defendant argues in its partial motion to dismiss that

plaintiff has not pleaded sufficient facts to state a claim for

negligence separate from the private and public nuisance claims

and that defendant does not have a recognized duty to protect

its neighbors from odors.  Plaintiff counters that defendant has
a duty to operate its facility with due care to prevent the
emission of noxious odors.

As the Court of Appeals made clear in <u>Baptiste v.
Bethlehem Landfill Co.,</u> a plaintiff can rely on the same
conditions for nuisance to state a separate negligence claim if
there is an allegation of a breach of a legal duty.  965 F.3d
214, 228 n.10 (3d Cir. 2020).  Based on the factual allegations
in the complaint taken in the light most favorable to plaintiff,
plaintiff has sufficiently pleaded the existence of a legal duty
on the part of defendant regarding the operation of defendant's
facility.  As the Court of Appeals explained in <u>Baptiste</u>, "in
Pennsylvania, a duty of reasonable care attaches to persons
undertaking affirmative, risk-causing acts."  <u>Id.</u> at 228 n.11
(citing <u>Dittman v. UPMC</u>, 196 A.3d 1036, 1046 (Pa. 2018)).  "That
includes the operation of industrial sites."  <u>Id.</u>  Like the
defendant in <u>Baptiste</u> which operated a landfill, defendant in
this matter has voluntarily undertaken the operation of an
industrial site that turns waste into fuel.  Therefore, a duty
attaches to operate this facility in a way that does not cause
unreasonable risk of harm to others.

Plaintiff, however, fails to plead sufficient facts
alleging physical injury or property damage to support her claim
for negligence.  Although the Court of Appeals declined to

-6-

"venture into the weeds" in Baptiste to decide whether the
plaintiffs' negligence claim failed for lack of physical
property damages from the noxious fumes, it did explain that "it
is not difficult to conceive how the presence of hazardous
particulates in the air could constitute physical property
damage if these pollutants infiltrate physical structures." Id.
at 229 n.12.  The Court also referred to contamination of
groundwater through seepage into wells as constituting physical
damage.  Id.  It spoke of hazardous contaminants that "have
physically invaded the plaintiffs' property and 'permeated the
walls'" in discussing the potential for physical property damage
from the hazardous chemicals.  Id.  These examples of property
damage suggest that the damage to plaintiff's property must in
some way be physical for it to constitute property damage when
pleading a claim for negligence.

          This conclusion is supported by the reasoning of the
Court of Appeals in In re Paoli Railroad Yard PCB Litigation. 35
F.3d 717 (3d Cir. 1994).  There the Court determined that
plaintiffs could make out a claim for diminution of value of
their property without showing permanent physical damage to the
land if: "(1) defendants have caused some (temporary) physical
damage to plaintiffs' property; (2) plaintiffs demonstrate that
repair of this damage will not restore the value of the property
to its prior level; and (3) plaintiffs show that there is some

ongoing risk to their land." <u>Id.</u> at 798.  The Court of Appeals
further clarified the necessity of demonstrating physical damage
by noting that this rule for diminution of value to the land
"only allows recovery when there has been some initial physical
damage to plaintiffs' land." <u>Id.</u> at 798 n.64.[2]

Plaintiff has not pleaded physical damage to her
property such as allegations that the odors "infiltrate physical
structures," contaminate groundwater, or cause any personal
injuries.  <u>See</u> <u>Baptiste</u>, 965 F.3d at 229 n.12.  Instead, she
avers that the odors have caused damage to her property solely

_____

2.   Plaintiff argues that <u>In re Paoli</u> found that stigma alone
is enough to recover a loss of value.  While the Court of
Appeals did decide that "the stigma associated with the prior
presence of PCBs on [plaintiffs'] land constitutes permanent,
irremediable damage to property under Pennsylvania case law such
that they can recover for the diminution of value of their
land," the court concluded as such in reversing the district
court's finding that plaintiffs could not recover for diminution
of value absent <u>permanent</u> physical damage.  <u>In re Paoli</u>, 35 F.3d
at 796.   That case concerned recovery for diminution of value
after the Environmental Protection Agency's cleanup and removal
of the groundwater and soil contamination of plaintiffs'
properties from polychlorinated biphenyls ("PCBs").  <u>Id.</u>  Thus,
the Court of Appeals considered the permanence of the physical
damage and what costs plaintiffs could recover after the cleanup
was complete since typically only the costs of repair are
recoverable for temporary physical damage.  <u>Id.</u> at 797.
Consequently, the court articulated the rule recited above
requiring "some (temporary) physical damage to plaintiffs'
property" and that "the stigma associated with [plaintiffs']
land will remain in place after any physical damage to their
land has been repaired." <u>Id.</u> at 798, 798 n.64.  Therefore,
plaintiff is wrong to conclude that stigma alone allows for
recovery for loss of value absent any physical damage to
property.

due to the loss of its use and enjoyment, that is preventing her and her neighbors from engaging in such activities as going outside, using their yard or patio, or opening their windows on certain days.  On this basis plaintiff claims diminution in market value of her property.

Plaintiff cites Dalton v. McCourt Electric, LLC to support her argument that loss of use of enjoyment is recoverable in negligence.  See Civil Action No. 12-3568, 2013 WL 1124397 (E.D. Pa. March 19, 2013).  That case is inapposite. It dealt with a fire to the plaintiffs' home and recovery for costs incurred from the displacement as a result of that fire. Id. at *1.  The plaintiffs in Dalton clearly suffered a physical injury to their property when a fire damaged their home and forced them to vacate their home for an extended period of time. Id.  That case is not analogous to plaintiff's circumstances as pleaded in this complaint.  Absent any allegations of physical damage to her property, plaintiff has not sufficiently pleaded a claim for negligence.

IV.

As part of the prayer for relief, plaintiff seeks "[a]n award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations."  Defendant seeks dismissal of this requested injunctive relief on the ground that the doctrine of

-9-

primary jurisdiction favors deferring to the Pennsylvania DEP
and the Environmental Hearing Board to regulate waste
management.  Plaintiff counters that defendant's permit from the
DEP should not prevent plaintiff from seeking injunctive relief
when the regulatory scheme thus far has failed to prevent the
noxious odors despite numerous complaints to the DEP.

Primary jurisdiction "applies where a claim is
originally cognizable in the courts, and comes into play
whenever enforcement of the claims requires the resolution of
issues which, under a regulatory scheme, have been placed within
the special competence of an administrative body." Baykeeper v.
NL Industries, Inc., 660 F.3d 686, 691 (3d Cir. 2011) (quoting
United States v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956)).
Courts have looked to the following four factors to determine if
primary jurisdiction is appropriate:

> (1) Whether the question at issue is within
> the conventional experience of judges or
> whether it involves technical or policy
> considerations within the agency's
> particular field of expertise; (2) Whether
> the question at issue is particularly within
> the agency's discretion; (3) Whether there
> exists a substantial danger of inconsistent
> rulings; and (4) Whether a prior application
> to the agency has been made.

Id.  However, our Court of Appeals has cautioned that federal
courts should only abstain from exercising their jurisdiction in
exceptional cases.  Id. at 692.  "Federal courts have a

'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" <u>Id.</u> at 691 (quoting <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976)).

This is not one of those exceptional cases.  The court is well-suited for determining issues of private and public nuisance.  There is nothing before us to indicate that the issues call for such specialized technical expertise that supports the court abstaining from its "virtually unflagging obligation" to exercise its jurisdiction.

Although the DEP has various powers to investigate and enforce its permits and regulations, defendant has not pointed the court to any law or regulation that the DEP is capable of providing a remedy for a private citizen bringing a cause of action against one of its permitted facilities for recovery of damages.  Thus, there is not a danger of inconsistent rulings in this matter.  Accordingly, there is nothing before this court to support abstention in favor of granting primary jurisdiction to the DEP or the Environmental Hearing Board.

V.

Finally, defendant argues that plaintiff's request for punitive damages should be dismissed because plaintiff has failed to plead sufficiently outrageous or extreme conduct on the part of defendant.  Under the applicable Pennsylvania law, punitive damages are proper "only in cases where the defendant's

-11-

actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005).  They are an "'extreme remedy' available in only the most exceptional matters." Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005).

Here, plaintiff has pleaded that defendant recklessly and intentionally failed to maintain its facility thereby causing noxious odors to invade plaintiff's property.  These allegations, if proven, may support a claim for punitive damages.  Discovery is necessary to help make this determination.  See Young v. Westfall, Civil Action No. 06-2325, 2007 WL 675182, at *2 (M.D. Pa. March 1, 2007).  After review of the complaint, we find that there are sufficient allegations at this point to allow plaintiff to seek punitive damages.  Whether plaintiff can prove conduct on the part of defendant arising to the level sufficient to award punitive damages will await another day.