# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLY LLOYD, on behalf of herself and all others similarly situated, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Case No. 2:20-cv-4330-HB |
| vs. | ) <br> ) |
| COVANTA PLYMOUTH RENEWABLE ENERGY, LLC, | ) <br> ) JUDGE HARVEY BARTLE III <br> ) |
| Defendant. | ) <br> ) |

Kevin S. Riechelson
Attorney I.D. 58960
**KAMENSKY COHEN & RIECHELSON**
194 South Broad Street
Trenton, New Jersey, 08608
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@kcrlawfirm.com

Steven D. Liddle*
Nicholas A. Coulson*
Matthew Z. Robb*
*Admitted Pro Hac Vice*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiff and the Putative Class*

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO ALLOW *EX PARTE* INTERVIEWS OF PUTATIVE CLASS MEMBERS**

Plaintiff Holly Lloyd, on behalf of herself and all others similarly situated ("Plaintiff"), hereby responds in opposition to Defendant Covanta Plymouth Renewable Energy, LLC's (hereinafter "Defendant" or "Covanta") request to engage in an unrestrained *ex parte* interview campaign with putative class members. At the parties' initial status conference with the Court, pursuant to Fed. R. Civ. P. 16, counsel for Defendant stated that it intended to seek leave to conduct interviews of putative class members. Because Defendant's counsel insists on conducting *ex parte* interviews in a manner that is forbidden by Pennsylvania law, Plaintiffs objected to this request, and now respond in opposition to Defendant's request for the reasons stated herein.

To be clear, Defendant's proposed *ex parte* interview campaign has one purpose, and one purpose only—to collect unsolicited, incomplete, and misleading (but sworn) statements from uncounseled putative class members, for the purpose of destroying unwitting putative class members' right to benefit from, or participate in, class litigation. The vast majority of the putative class members are unaware of this litigation, or their rights herein. Defendant's proposal is in plain violation of Pa. Rules Prof'l Conduct R. 4.2, which has been wholly adopted by this Court, and the proposed *ex parte* communication campaign threatens to take advantage of uncounselled lay persons and the sanctity of the lawyer-client relationship that exists for the purpose of benefitting the proposed class. Defendant's request should be denied, or, in the alternative, substantially limited to ensure that putative class members are (at minimum) apprised of their rights under this litigation, the identity of putative class counsel, and the interviewer's role in advocating on behalf of Defendant for litigation purposes.[1]

---

[1] If Defendant's request is granted, which Plaintiff maintains would be unlawful, the Court should also require Defendant to submit a proposed interview script to the Court for review and approval to ensure that the communications are not misleading or abusive. Further, the Court should order

**LEGAL STANDARD**

In class actions under Rule 23, it is well-established that "'the court may make appropriate orders: . . . [including] (3) imposing conditions on the representative parties or on intervenors … [and] (5) dealing with similar procedural matters.'" *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S. Ct. 2193, 2199 (1981) (quoting Fed. R. Civ. P. 23(d)). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id*. at 100. "In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel … [and] ***the rules of ethics properly impose restraints on some forms of expression***." *Id.* at 104 n.21 (citing ABA Code of Professional Responsibility, DR 7-104 (1980)) (emphasis added).

Rule 4.2 of the Pennsylvania Rules of Professional Conduct, "which has been adopted by this court, provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

*Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 665 (E.D. Pa. 2001) (Bartle, J.) (quoting Pa. Rules Prof'l Conduct R. 4.2; E.D. Pa. R. Civ. P. 83.6, R. IV).[2] "The purpose of Rule 4.2 is to

---

that Defendant keep records of the content of the interviews and that those records are turned over to Plaintiff's counsel. These protective measures are fully within the Court's discretion and necessary to ensure that the rights of Plaintiff and the putative class are protected.

[2] E.D. Pa. R. Civ. P. 83.6, R. IV(B) states that "[t]he Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that state court[.]" Defendant ignores this Court's adoption of the Pennsylvania Rules of Professional Conduct and claims, wrongly, that "[f]ederal procedural law indisputably governs this diversity case … [and therefore] Pennsylvania state law has no bearing" on this motion. However, the Pennsylvania Rules of Professional Conduct are the "federal procedural law" adopted and to be applied by this Court. Accordingly, Defendant's argument that

2

prevent lawyers from taking advantage of uncounselled lay persons and to preserve the efficacy and sanctity of the lawyer-client relationship." *Carter-Herman v. City of Philadelphia*, 897 F. Supp. 899, 901 (E.D. Pa. 1995) (Bartle, J.) (citing G.C. Hazard, Jr., & W.W. Hodes, *The Law of Lawyering* 730 (2d ed. 1990); C.W. Wolfram, *Modern Legal Ethics* § 11.6 612-13 (1986). This Court has held that, in class actions, "we cannot permit communications which violate the intent of Rule 4.2." *Id.*

"In the federal context, the Supreme Court has stated that a class action is 'a truly representative suit' and that 'class action representation' belongs to all parties, even 'asserted class members who were unaware of the proceedings brought in their interest.'" *Dondore*, 152 F. Supp. at 665 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974)). "The truly representative nature of a class action suit affords its putative members certain rights and protections including … the protections contained in Rule 4.2 of the Rules of Professional Conduct." *Dondore*, 152 F. Supp. at 666 (internal citation and marks omitted). Accordingly, during the pre-certification stage, this Court has on numerous occasions issued appropriate orders under Rule 23(d), which deny or limit *ex parte* interviews with uncounseled lay persons that are members of a putative class. *See, e.g., Dondore*, 152 F. Supp. at 666 (denying *ex parte* interviews of putative class); *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 610 (E.D. Pa. 2019) (same); *Carter-Herman*, 897 F. Supp. at 904 (limiting ex parte interviews and requiring necessary disclosures to protect the rights of the putative class).

---

Pennsylvania Rules of Professional Conduct are inapplicable is in plain violation of this Court's rules of procedure.

## ARGUMENT

The authority on this issue is clear. "The Pennsylvania Supreme Court has long held that putative class members are 'properly characterized as parties to the action." *Braun v. Wal-Mart Stores Inc.*, 60 Pa. D. & C.4th 13, 17 (C.P. 2003) (quoting *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975). Because of this, the protections of Pennsylvania Rule of Professional Conduct 4.2, which governs communications with represented parties and has been wholly adopted by this Court, applies to putative class members. "These protections should indiscriminately apply to all putative class members." *Braun*, 60 Pa. D. & C.4th at 19.

"[A]ny discussion with [class members] concerning the subject matter of [the] lawsuit should be done within the parameters of formal discovery. Should it choose to, [the defendant] may subpoena and depose putative class members." *Id.*; *see, e.g., Dondore*, 152 F. Supp. 2d at 666 (stating that "[o]ur conclusion, of course, does not prevent Cabot from obtaining whatever information the potential witnesses may possess in connection with the individual cases before this court. Cabot is free to subpoena and depose these individuals to the extent permitted under the federal discovery rules."). Defendant should be required to utilize the traditional federal discovery rules in seeking to obtain information from the putative class, which it can readily do in this case.

Instead, Defendant attempts to run an end-around formal discovery rules in order to gain an advantage in the litigation and prejudice the rights of Plaintiff and the putative class. Defendant wishes to send unsupervised private investigators door-to-door to engage in confusing and misleading communications with lay members of the putative class.[3] Through these interviews,

---

[3] Through its motion, Defendant provided the Court with no information regarding the content of the interviews it seeks to conduct through private investigators. Thus, there has been no effort whatsoever on Defendant's part "to protect uncounseled laypersons from lawyers who may take advantage of their position of power." *Braun*, 60 Pa. D. & C.4th at 19.

members of the putative class will not be apprised of (1) the existence of this class litigation, (2) their potential rights in the litigation, (3) the private investigator's role in seeking to advance the adverse interests of Defendant, (4) the reasons for the interview (including that their statements may be used to exclude them from the class), (5) their right to refuse to be interviewed, or (6) the interviewees right to have his or her own counsel present. *See University Patents, Inc. v. Kligman*, 737 F. Supp. 325, 328 (E.D. Pa. 1990) (issuing protective order excluding information obtained by the defendant through impermissible *ex parte* interviews and ordering the defendant to produce any statements or exhibits impermissibly obtained through the misleading contacts). Indeed, Defendant cannot "circumvent[] discovery procedures in order to gain an unfair advantage in litigation," *University Patents, Inc.*, 737 F. Supp. at 329, which is precisely what Defendant seeks to do here.

In *Dondore*, this Court was faced with a virtually identical request by a defendant in a putative class action to interview potential witnesses, who were putative class members in a class action that included, *inter alia*, "all residents who have ever resided within a six (6) mile radius of the [defendant's facility.]" *Dondore*, 152 F. Supp. 2d at 664. Similarly, here, the putative class includes "all owner/occupants and renters of residential property within a 1.5 mile radius of the Covanta Plymouth Renewable Energy Facility." [ECF No. 1, Pg. 9 of 23, ¶38]. This Court denied Defendant the right to interview the putative class in *Dondore* because, like here, "[i]f defense counsel or counsel otherwise adverse to their interests is allowed to interview and take statements from often unsophisticated putative class members without the approval of counsel who initiated the action, the benefits of class action litigation could be seriously undermined." *Id.* at 664. Accordingly, Defendant's request was denied in its entirety.

The same circumstances and rationale that led this Court to prevent unsupervised, unrestrained *ex parte* interviews of the putative class in *Dondore* apply here. Defendant has not explained what measures will be taken during the proposed, yet unspecified, *ex parte* interview process to protect the integrity and benefits of this litigation. Indeed, that is because the entire purpose of the *ex parte* interviews is to obtain exculpatory statements for the Defendant and defeat class certification. This is demonstrated by the fact that Defendant has preemptively claimed that these *ex parte* interviews must be conducted without Plaintiff's counsel present and that Defendant should be entitled to "keep work product including interview notes confidential." [ECF 27-1, Pg. 9 of 11]. In other words, Defendant seeks the right to canvass for exculpatory affidavits, while shielding Plaintiff, the putative class, and the Court of any *inculpatory* evidence that it may—and undoubtedly will—uncover. Just as in *Dondore*, formal discovery is the best way to protect the rights of Plaintiff, the putative class, and this litigation, while guaranteeing Defendant the right to conduct a proper investigation through formal discovery.

Again, in *Gates v. Rohn and Haas Co.*, No. 06-1743, 2006 U.S. Dist. LEXIS 85562, 2006 WL 3420591 (E.D. Pa. Nov. 22, 2006), this Court concurred with *Dondore* and held that "Defendants are prohibited from contacting and interviewing putative class members." *Gates*, 2006 U.S. Dist. LEXIS 85562at *6 n.2. That is because "[t]he Pennsylvania Rules of Professional Conduct provide that 'a lawyer shall not communicate about the subject of the presentation with a party that lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.'" *Id.* (quoting Pa. Rules Prof'l Conduct R. 4.2 and citing E.D. Pa. Civ. P. 83.6, R.IV). Defendant has no such authority here.

Yet again, in 2019, this Court was faced with this issue in a class action presented under Fed. R. Civ. P. 23 and Pa. R. Civ. P. 1701 and ruled the same way in *Garcia v. Vertical Screen,*

*Inc.*, 387 F. Supp. 3d 598, 610 (E.D. Pa. 2019). In *Garcia*, this Court found that the presence of Rule 23 class claims meant that putative "class members are treated as represented parties until a certification decision is made, meaning opposing counsel may not communicate with them." *Id.* (citing *Weller v. Dollar Gen. Corp.*, No. 17-2292, 2019 U.S. Dist. LEXIS 34325, 2019 WL 1045960, at *2 (E.D. Pa. Mar. 4, 2019)). The Court went on to state that "[b]ecause the potential opt-in plaintiffs are also putative class members, defense counsel is not permitted to contact them." *Garcia*, F. Supp. 3d at 610. Altogether, *Garcia*, *Gates*, and *Dondore* represent this Court's unwavering application of Rule 4.2's protections to putative class members across nearly 20 years and without regard to whether the class action is brought pursuant to Fed. R. Civ. P. 23 or Pa. R. Civ. P. 1701.

In *Carter-Herman*, this Court also recognized that it was necessary to prevent unrestrained and unsupervised *ex parte* interviews of the putative class. There, because "police officers are undoubtedly more sophisticated about the legal process than most laypersons," the Court permitted certain, limited *ex parte* interviews to take place but ordered important safeguards to prevent abusive and misleading communications. *Carter-Herman*, 897 F. Supp. at 904. The Court ordered that prior to any permissible *ex parte* interview with putative class members, the interviewer "shall advise the interviewee of: (1) counsel's representative capacity; (2) counsel's reasons for seeking the interview; (3) the interviewee's right to refuse to be interviewed; and (4) the interviewee's right to have his or her own counsel present." *Id.*

Here, the putative class is not likely to be nearly as sophisticated as the police officers in *Carter-Herman* and far less likely to be aware of the underlying circumstances leading to the litigation. *Carter-Herman* involved alleged civil rights accusations against the officers' own police department and their co-workers, which made it highly likely that the interviewees would be aware

7

of the reasons for the unsolicited interrogations. Such circumstances are not present here. While putative class members are likely to be intimately aware of Defendant's noxious odor problem, and the concerns of the community, individual members are highly unlikely to understand their legal right to do anything about it, let alone that Plaintiff has instituted an action seeking to represent their interests. Thus, unlike *Carter-Herman*, the *ex parte* interviews should not be permitted to occur, as this Court held in *Dondore*, *Garcia*, and *Gates*.

However, in the alternative, if the Court determines that certain *ex parte* interviews should be permitted, a similar protective order to that in *Carter-Herman* should be entered in order to ensure that, at minimum, the putative class is made aware that the interviewer's purpose is to advance Defendant's interests in this litigation, which are overwhelmingly adverse to their own, and that interviewees may have rights in this class action that could be undermined by the statements they provide to the interviewer. Accordingly, if any *ex parte* interviews are permitted, Plaintiff alternatively requests that the Court also enter an order requiring Defendant to develop a survey form for presentation and approval by the Court. Pending Court approval, Defendant should also be required to document all interview responses on that standard form, not to stray from the approved script, and to turn over all survey responses to Plaintiff's Counsel. *See University Patents, Inc.*, 737 F. Supp. at 328 (ordering the defendant "to produce any statements or exhibits obtained through such *ex parte* contacts within ten (10) days.").

Defendant goes to great lengths to argue that this Court's holdings in *Dondore*, *Carter-Herman*, and *Garcia* were erroneous. Plaintiff disagrees. Defendant's argument is premised on extrajurisdictional case law, non-binding opinions, and a single footnote by the district court following the *Weller* opinion. In *Weller*, Magistrate Judge Rice followed the overwhelming authority of *Dondore*, *Braun*, and their progeny and held that defense counsel in that case

"improperly contacted and interviewed … putative members of [the plaintiff's] Fed. R. Civ. P. 23 class." *Weller v. Dollar Gen. Corp.*, 2019 U.S. Dist. LEXIS 34325, *8, 2019 WL 1045960 (E.D. Pa. March 4, 2019). The magistrate accordingly recommended sanctions against the defendant.

While Defendant is correct that the district court in *Weller* did not ultimately adopt that portion of the magistrate's opinion, Defendant entirely sidesteps the fact that the district court *denied* the defendant's objections in *Weller* without prejudice and ordered that an evidentiary hearing be held to develop a more convincing record.[4] The motion at issue in *Weller* was subsequently withdrawn, and no decision was ultimately rendered on the issue. Essentially, Defendant would have the Court ignore nearly 20 years' worth of precedent based on a single, unpublished footnote. The Court should not accept Defendant's invitation to overturn decades of precedent based on such flimsy authority.  Rather, "[c]ontrary to [Defendant's] claim, federal and state cases barring *ex parte* communication based on the rules of professional conduct are consistent with *Gulf Oil*." *Weller*, 2019 U.S. Dist. LEXIS 34325, at *7 (citing *Gates*, 2006 U.S. Dist. LEXIS 85562, 2006 WL 3420591, *6 n.2; *Dondore*, 152 F. Supp. 2d at 666; and *Braun*, 60 Pa. D. & C.4th 13, 2003 WL 1847695, at *1-*3).

The other cases Defendant cites from Pennsylvania federal courts are either inapplicable, do not support Defendant's position, or affirmatively support Plaintiff's position. *Arroyo v. Aspen Constr. Servs.*, No. 19-5317, 2020 U.S. Dist. LEXIS 136061, at *6 (E.D. Pa. July 31, 2020) was not a class action. It was a collective action under the Fair Labor Standards Act, which unlike Rule 23 operates under an opt-in procedure – there are no passively participating class members. *Gauzza*

---

[4] This is likely because the magistrate recommended the imposition of sanctions, a serious remedy which is not at issue here. Thus, a *Gulf Oil* evidentiary hearing on the issue is an unnecessarily wasteful step to take, given that the communications Defendant seeks to make with the putative class are plainly violative of Pennsylvania Rule of Professional Conduct R. 4.2, which has been wholly adopted by this Court.

*v. Prospect Med. Holdings, Inc.,* 2018 WL 4853294 (E.D. Pa. Oct. 4, 2018) involved the defendant hospital merely requiring employees hired *after* a class action has been commenced to sign arbitration agreements. The case is inapposite because it does not involve a defendant communicating with absent class members about the subject of pending litigation, as is the case here.

*Walney v. SWEPI LP*, No. 13-102 Erie, 2017 U.S. Dist. LEXIS 8679 (W.D. Pa. Jan. 23, 2017) supports Plaintiffs' position, not Defendant's. That case involved a defendant seeking to place restrictions on class counsel's (as opposed to counsel for the defendant's) ability to communicate with potential opt-out plaintiffs. In other words, there was no concern that those who had opted-out were represented parties for the purposes of Rule 4.2. But the Court plainly noted that "[s]ome courts in Pennsylvania and elsewhere have suggested that an attorney-client relationship forms upon certification of the class, or even prior thereto, such that defense counsel is ethically precluded from contacting absent class members." *Id.* at *34. Indeed, *Walney* properly characterized *Gates v. Rohm & Haas Co.*, No. CIV.A. 06-1743, 2006 U.S. Dist. LEXIS 85562, 2006 WL 3420591, at *2 (E.D. Pa. Nov. 22, 2006) as holding that "prior to denial of certification, Rule 4.2 prohibited defense counsel from contacting or interviewing potential witnesses who are putative class members[.]" *Id.*

Ironically, Defendant attempts to cite a Magistrate Judge Rice's recommendation from *Faloney v. Wachovia Bank, N.A.*, Case No. 07-CV-1455, 2008 U.S. Dist. LEXIS 137295, *6 (E.D. Pa. July 28, 2008) to support its position. However, *Faloney* also supports Plaintiff's position, as Magistrate Judge Rice noted that "contact with potential class members is fraught with peril" and *denied* the defendant's "Motion to Confirm Right to Interview Putative Class Members." *Id.* at *2, 3. Unsurprisingly, Magistrate Rice held that the defendant's purported interest in interviewing

putative class members "is substantially outweighed by the need to bar contact with putative class members without the presence of class counsel." *Id.* at 5-6. While *Faloney* did rely upon the principles outlined in the Supreme Court's opinion in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981), "federal and state cases **barring *ex parte* communication based on the rules of professional conduct are consistent with *Gulf Oil*.**" *Weller*, 2019 U.S. Dist. LEXIS 34325, at *7 (citations omitted) (emphasis added). Plaintiff does not argue otherwise.

Indeed, *Gulf Oil* only confirms this Court's inherent power to issue appropriate orders to protect the rights of the putative class. The *Gulf Oil* court explicitly stated that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100. Where, as here, the Defendant's proposed course of conduct would be plainly violative of Rule 4.2, which has been wholly adopted by this Court, an order limiting putative class member communications is necessary to enforce the rule, as this Court has repeatedly held. Defendant's request for unrestrained and unsupervised *ex parte* communications with the putative class runs afoul of the well-established rules adopted by this Court and must be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Allow *Ex Parte* Interviews of Putative Class Members should be denied in its entirety.

In the alternative, should the Court determine that certain *ex parte* communications be permitted, the Court should enter an order placing appropriate limits on Defendant's interviews, a

proposal for which should be presented to the Court by the Defendant to ensure that the rights of

the putative class are protected.

Dated: March 25, 2020

Respectfully submitted,

*/s/ Matthew Z. Robb*

\*Steven D. Liddle
\*Nicholas A. Coulson
\*Matthew Z. Robb
LIDDLE & DUBIN, P.C.
*\*Admitted Pro Hac Vice*
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
mrobb@ldclassaction.com


Kevin Riechelson
Attorney I.D. 58960
Kamensky, Cohen, & Riechelson
194 South Broad St.
Trenton, New Jersey 08608
(609) 394-8585
KRiechelson@kcrlawfirm.com


*Attorneys for Plaintiff & the Putative Class*