```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA


HOLLY LLOYD                    :        CIVIL ACTION
                              :
        V.                    :
                              :
COVANTA PLYMOUTH RENEWABLE    :        NO. 20-4330
ENERGY, LLC                   :
```

MEMORANDUM

Bartle, J.                                    February 10, 2022

Plaintiff Holly Lloyd has sued defendant Covanta Plymouth Renewable Energy, LLC in this putative class action for damages under Pennsylvania law for creating a private and public nuisance. Lloyd alleges Covanta's municipal waste incinerator in Conshohocken, Pennsylvania emits noxious odors into her nearby residential neighborhood, thereby interfering with Lloyd and her neighbors' use and enjoyment of their properties and causing loss of property value. Before the court is Lloyd's motion to certify under Rule 23(b)(3) of the Federal Rules of Civil Procedure a class consisting of "all owner/occupants and renters of residential property within a 1.5-mile radius" of Covanta's facility.

I

The facts alleged in the complaint are as follows. Covanta operates a municipal waste incinerator facility that converts over 1,200 tons of municipal solid waste per day into

energy that it sells.  Household waste from nearby communities is trucked to the facility and placed into incinerators where it is combusted at high temperatures.  Waste byproducts from the combustion are released into the ambient air through emission stacks.

Covanta operates its incinerator under permit from the Pennsylvania Department of Environmental Protection ("DEP"). Covanta's permit prohibits "the emission into the outdoor atmosphere of any malodorous air contaminants from any source in such manner that the malodors are detectable outside the property of the person on whose land the source is being operated."  To prevent fugitive air emissions, Covanta must maintain a temperature of 1800 degrees Fahrenheit within the combustion chambers and employ air pollution control equipment and operational practices.

Lloyd alleges Covanta's emission control processes are inadequate because they have allowed noxious odors to escape and pervade nearby residential areas.  Covanta's incinerator is located in a primarily industrial area bounded to the west by the Schuylkill River, to the north by Interstate 276, and to the south by Interstate 476.  Lloyd owns and resides in a home located in the primarily residential neighborhood on the opposite side of Interstate 476.  She reports frequent, pervasive odors outside her home early in the morning and late

at night.  She describes the odors as akin to "plastic,"
"chemical," and "hospital waste."

        In reports to Lloyd's counsel, her neighbors have said
they have also experienced odors.  Twenty-nine Conshohocken
residents returned responses to a survey her counsel mailed out
in which they indicated that they have been impacted by noxious
odors from Covanta's facility.  In their responses, some claimed
that the odors have been so offensive that they prevent them
from opening their windows, doing yard work, walking their dogs,
and entertaining guests in their backyards.

        Between 2016 and 2020, the DEP received approximately
200 complaints about the noxious odors.  In this period, the DEP
cited Covanta with Notices of Violation seven times over
malodor.  Over forty individuals signed a June 2020 letter to
the DEP demanding Covanta's voluntary cessation of its operation
and opposing its application for a permit renewal.  In addition,
roughly 800 individuals have joined a Facebook Group entitled
"Covanta Plymouth Trash Incinerator – Community Information and
Action."  Lloyd claims these individuals participate in the
group to discuss Covanta's odor emissions.

                                II

        Lloyd, as noted above, brings two claims against
Covanta under Pennsylvania law, one for private nuisance and one
for public nuisance.

                              -3-

The Supreme Court of Pennsylvania has adopted the
Restatement (Second) of Torts § 822 for private nuisance suits.
Karpiak v. Russo, 676 A.2d 270, 272 (Pa. Super. Ct. 1996)
(citing Waschak v. Moffat, 109 A.2d 310 (Pa. 1954)).
Section 822 provides as follows:

> One is subject to liability for a private
> nuisance if, but only if, his conduct is a
> legal cause of an invasion of another's
> interest in the private use and enjoyment of
> land, and the invasion is either
>
>     (a) intentional and unreasonable,
> or
>
>     (b) unintentional and otherwise
> actionable under the rules controlling
> liability for negligent or reckless conduct,
> or for abnormally dangerous conditions or
> activities.

For an invasion to be actionable, it must cause
"significant harm," which is harm "of a kind that would be
suffered by a normal person in the community or by property in
normal condition and used for a normal purpose." Restatement
(Second) of Torts § 821F (1979). "If normal persons living in
the community would regard the invasion in question as
definitely offensive, seriously annoying or intolerable, then
the invasion is significant." § 821F cmt. c.

Pennsylvania courts also apply the Restatement
(Second) of Torts to public nuisance claims. E.g., Machipongo
Land & Coal Co. v. Dep't of Env't Prot., 799 A.2d 751, 773
(Pa. 2002). Section 821B sets out these elements:

-4-

(1) A public nuisance is an unreasonable interference with a right common to the general public.

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

### III

A class may be certified only if the plaintiff can satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

The elements of this four-part test are known as numerosity, commonality, typicality, and adequacy of representation.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).

In addition to the prerequisites of Rule 23(a), Lloyd must also satisfy one of the requirements under Rule 23(b).  She seeks to certify a class only under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  In re Modafinil Antitrust Litig., 837 F.3d 238, 248 (3d Cir. 2016).  To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis" that requires it to look beyond the pleadings.  Id. at 248-49.  To conduct this analysis the court "may have to venture into the territory of a claim's merits and evaluate the nature of the evidence."  Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011), opinion reinstated in part, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

IV

Before analyzing Rule 23 factors, the court must
determine whether the proposed class is ascertainable.  See Byrd
v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015).  To be
ascertainable, the class must be "defined with reference to
objective criteria," and there must be "a reliable and
administratively feasible mechanism for determining whether
putative class members fall within the class definition."  Id.

Covanta contends that Lloyd's proposed class is not
ascertainable because Lloyd has not proven that all within the
1.5 mile radius experienced odor impact.  Covanta essentially
argues that the proposed class is overly broad.  Although a
class's overbreadth may warrant denial of certification under
Rule 23 factors, our Court of Appeals has warned that it is not
a valid consideration in analyzing ascertainability.  See id. at
167–69; Kelly v. RealPage, Inc., 338 F.R.D. 19, 29–30
(E.D. Pa. 2020), appeal filed (April 7, 2021) (No. 21-1672).

Lloyd defines her proposed class by reference to
objective criteria because the identity of owners and renters of
the properties within a 1.5-mile radius of the Covanta facility
is verifiable.  There is also a feasible method of determining
whether an individual fits within this definition--one would
only need a map to discern whether a property is located within

this radius.  Accordingly, the court finds that Lloyd's proposed class is ascertainable.

V

The court now turns to the Rule 23 factors for determining whether a class should be certified.

A. Numerosity

As stated above, Rule 23(a)(1) provides that numerosity is established when "the class is so numerous that joinder of all members is impracticable."  There is no fixed minimum number of plaintiffs needed to satisfy the numerosity requirement.  In re Modafinil, 837 F.3d at 249.  The general rule is that a class of more than forty members is numerous, while a class of fewer than twenty members is not.  See id. at 250.

A plaintiff must "be prepared to prove that there are in fact sufficiently numerous parties."  Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 357 (3d Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)).

> Of course, Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members. But in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding.

Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 596
(3d Cir. 2012)).  Thus, to prove that a class of all individuals
within a geographic area is numerous, the lead plaintiff must
provide evidence that there are in fact a sufficient number of
plaintiffs in the area subject to the defendant's conduct.  See
Frompovicz v. Niagara Bottling, LLC, 420 F. Supp. 3d 361, 368–69
(E.D. Pa. 2019); Chen v. Amtrak, Civ. A. No. 18-3617, 2019 WL
5294419, at *6 (E.D. Pa. Oct. 18, 2019); Kemblesville HHMO Ctr.,
LLC v. Landhope Realty Co., Civ A. No. 08-2405, 2011 WL 3240779,
at *7 (E.D. Pa. July 28, 2011).

        As mentioned above, Lloyd seeks to certify the
following class:  "all owner/occupants and renters of
residential property within a 1.5-mile radius" of Covanta's
facility.  She asserts that all within this area have been
impacted by odors from Covanta.  As there are some 7,900
households within this area, Lloyd argues that her class is
numerous.

        Lloyd supports these assertions with the following.
First, her counsel sent a survey to households in the
Conshohocken area.  Twenty-nine households indicated in their
responses that they have been impacted by odors.  Second, Lloyd
cites "hundreds" of odor complaints submitted to the DEP by
Conshohocken residents.  The names and specific addresses of the
complainants have been redacted, although some complaints

describe the complainant's general location.  Lloyd plotted on a map the locations of households that responded to the survey and individuals who filed odor complaints and deduced that they are all within 1.5 miles of Covanta's facility.  Third, Lloyd bolsters her argument for numerosity by referencing the membership of the Covanta-themed Facebook group.

This evidence does not support a finding that all 7,900 households within the proposed class area have experienced odors emitted from Covanta.  Lloyd has presented no expert evidence that odors spread from Covanta's facility evenly and uniformly within the proposed class area.  Rather, as explained below, Covanta's presently uncontested experts opine that any odor impact varies depending on environmental factors such as proximity, wind, and topography.  Without any evidence that odors spread uniformly, the survey responses and DEP complaints cannot support an inference that each property within the class area has experienced odor impact.  See, e.g., Kemblesville, 2011 WL 3240779, at *5-7.

Perhaps best demonstrating the disconnect between Lloyd's proposed class and her evidence, Lloyd's counsel, with appreciated candor, conceded at oral argument that none of the survey respondents lives between 1.25 and 1.5 miles of the Covanta facility.  There is simply no evidence that residents of that quarter-mile band are properly included in the class.

In addition, Covanta has supplied evidence that many within the proposed class area have not been impacted by odors from Covanta's facility.  Covanta has produced affidavits from forty-two residents within the proposed class area stating that they had not noticed or been impacted by malodors.  Even if the survey responses and DEP complaints could support the 1.5-mile radius, these affidavits give reason to doubt that all within the 1.5-mile radius have experienced odor impact.

Furthermore, Lloyd cannot support numerosity by reference to the approximately 200 odor complaints made to the DEP.  As mentioned above, in the copies of these complaints that Lloyd submits with her motion, the names and locations of the complainants have mostly been redacted and the sources of the odors are not verified.

Lloyd's reliance on the membership of the Facebook group fares no better.  There is no way of knowing how many members of the group reside within 1.5 miles of Covanta's facility.  Even if the members' locations could be discerned, the court cannot assume that because a person has joined the group, they have experienced odor impact.[1]

---

1.   The group's name, "Covanta Plymouth Trash Incinerator – Community Information and Action," suggests it is a forum to discuss all aspects of Covanta's operation and not just its odor emissions.

-11-

Finally, the twenty-nine survey responses obtained by Lloyd's counsel, which are unsworn, cannot support numerosity. Even if the court found the survey responses reliable, they do not demonstrate on their own that joinder would be impracticable.  To certify a class "numbering in the gray area between 20 and 40," the lead plaintiff must show that joinder is impractical based on "factors beyond numbers alone."  William B. Rubenstein, Newberg on Class Actions § 3:12; see also In re Modafinil, 837 F.3d at 250.  Lloyd has not identified any concrete "considerations of docket control" or impediments to the "ability and motivation [of individual putative class members] to litigate as joined plaintiffs."  See In re Modafinil, 837 F.3d at 257.

Accordingly, the court finds Lloyd has not established numerosity, that is, she has not shown that "there are in fact sufficiently numerous parties" to proceed as a class action. Hayes, 725 F.3d at 357.

### B. Commonality

To establish commonality, "[t]he bar is not high." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 393 (3d Cir. 2015).  It "does not require identical claims or facts among class member[s]."  Marcus, 687 F.3d at 597 (alteration in original) (citation omitted).  A single common question is sufficient.  See Dukes, 564 U.S. at 359.  In fact,

-12-

"as long as all putative class members were subjected to the same harmful conduct by defendant, Rule 23(a) will endure many legal and factual differences among the putative class members." In re Cmty. Bank, 795 F.3d at 397.

The court finds that common issues of law and fact exist at least with respect to Covanta's conduct in operating its incinerator.  For example, the reasonableness of Covanta's odor mitigation practices is a question common to the putative class.  Accordingly, Lloyd has satisfied the commonality requirement under Rule 23(a).

## C. Typicality

Lloyd must also satisfy the requirement for typicality, the third prong of the Rule 23(a) analysis. Typicality means that "the claims of the class representatives must be typical of the class as a whole."  Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001).  Typicality ensures "that the class representatives are sufficiently similar to the rest of the class--in terms of their legal claims, factual circumstances, and stake in the litigation" and that their representation is fair to the rest of the class.  In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009).  Although the legal theories and factual circumstances need not be identical, there must be enough similarity "so that maintaining the class action is reasonably

-13-

economical and the interests of the other class members will be fairly and adequately protected in their absence." Id. at 598.

Our Court of Appeals has embraced a liberal approach to establishing typicality: "[i]f a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." Marcus, 687 F.3d at 598.

Lloyd alleges on behalf of the putative class that her property was invaded by odors from Covanta's facility. Her claim therefore arises from the same course of conduct that gives rise to the claims of the putative class members and relies on the same legal theory. Factual differences between her property and the properties of others within the proposed class area cannot defeat typicality. See id. Accordingly, the court finds that Lloyd has established typicality.

D. Adequacy of Representation

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, the court "primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." In re Cmty. Bank, 795 F.3d at

-14-

393.   "The principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class."   Id. As our Court of Appeals has explained, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."   Id. (citation omitted).

Covanta argues that Lloyd is not an adequate class representative because it claims Lloyd herself has not suffered much personal impact from the odors.  It cites Lloyd's deposition testimony in which she stated that she experiences odors only a few times a year, that odors have not significantly prevented her or her family from spending time outside on her property, and that she hopes her property value will "stay good."

While the testimony that Covanta identifies may undercut the merits of Lloyd's claim or the size of her financial interest in the litigation, it does not demonstrate that her interests are in any way adverse to the interests of the putative class.  Rather, Covanta has not identified how Lloyd's interest and incentives in litigating this suit would fall out of alignment with those of the rest of the putative class.

Covanta has not challenged the experience and performance of class counsel.  Lloyd's counsel specializes in class-action odor-nuisance lawsuits.  The court finds that Lloyd has established that her class counsel is adequate.  Accordingly, the court finds she has established adequacy of representation.

VI

As explained above, in addition to meeting the Rule 23(a) requirements, Lloyd must also satisfy the predominance and superiority requirements of Rule 23(b)(3).

A. Predominance

The predominance requirement ensures "proposed classes are sufficiently cohesive to warrant adjudication by representation."  Marcus, 687 F.3d at 600 (quoting Amchem Prods., 521 U.S. at 623).  The court must "examine each element of a legal claim" and decide whether they are "capable of proof at trial through evidence that is common to the class rather than individual to its members."  Id. (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311–12 (3d Cir. 2008)).  "If issues common to the class overwhelm individual issues, predominance should be satisfied."  Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 371 (3d Cir. 2015) (citation omitted).

Mass environmental tort cases seldom satisfy the predominance requirement of Rule 23(b)(3).  Typically in these

-16-

cases, causation and extent of injury must be decided on a
property-by-property basis.  Those individualized issues tend to
be more complex than common issues of the defendant's conduct.
The Advisory Notes to Rule 23(b)(3) recognize this recurrent
imbalance:  "A 'mass accident' resulting in injuries to numerous
persons is ordinarily not appropriate for a class action because
of the likelihood that significant questions, not only of
damages but of liability and defenses to liability, would be
present, affecting the individuals in different ways."

        Our Court of Appeals in Gates v. Rohm & Haas Co.
affirmed a district court's denial of class certification in a
case alleging property damage caused by chemical contamination.[2]
655 F.3d 255 (3d Cir. 2011).  There, the plaintiffs alleged a
chemical company violated the Comprehensive Environmental
Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et
seq., and Illinois state law when it dumped wastewater
containing a carcinogen into a lagoon.  The wastewater seeped
into an underground aquifer, evaporated into the air, and was
swept by the wind toward a nearby village.  The plaintiffs
sought to certify a class of all residents of the village.

        To bolster their class-wide proof, plaintiffs in Gates
offered air dispersion models from two experts who estimated the

_____

2.    Plaintiffs in Gates also sought medical monitoring.

average extent of contamination in each of the village's
properties.  Still, the Court of Appeals agreed with the
district court that the model could not account for enough of
the potential differences in the level of contamination between
properties.  Accordingly, the Court of Appeals affirmed the
finding of the district court that individual issues of
causation, extent of contamination, and amount of damages
predominated over the common issues of the defendant's conduct
in releasing the chemical.

          In synthesizing other cases involving environmental
contamination, our Court of Appeals found that "[s]ingle
instances or simple theories of contamination may be more apt
for consolidated proceedings than extensive periods of
contamination with multiple sources and various pathways."  655
F.3d at 271.  Accordingly, the Court distinguished the
plaintiffs' complex property damage claim from those presenting
"simpler theories of contamination or discrete incidents of
contamination."  Id.

          Similar to Gates, Lloyd's suit involves multiple
instances of exposure and injuries that will vary significantly
from property to property.  She alleges that odors from
Covanta's facility invaded properties in the proposed class area
on multiple dates between 2016 and 2020.  Her theories of

-18-

causation and extent of injury also turn on several complex
factors that cannot be established on a class-wide basis.

Covanta has presented unchallenged evidence that there
are other potential sources of malodor affecting the class area.
As mentioned above, Covanta's facility is located in a primarily
industrial area alongside other facilities that may emit noxious
odors.  Covanta offers an odor study of the class area conducted
by Odor Science & Engineering.  The study identified, among
other things, burnt rubber odors from a neighboring tire
recycler.  Covanta has also offered testimony from Karen
Vetrano, an odor expert, showing that odors from the nearby
interstate highways and the several nearby wastewater treatment
plants could be confused with the malodor that residents
attribute to Covanta.  The presence of these alternative odor
sources invites individualized inquiries into causation.

Lloyd characterizes the presence of other odor sources
as an issue of "contributory negligence" and argues that because
it is an affirmative defense, it is not an appropriate
consideration at this stage.  This argument misses its mark,
however, because courts often find that potential individualized
defenses spoil predominance.  See, e.g., Gonzalez v. Corning,
317 F.R.D. 443, 523 (W.D. Pa. 2016).  Furthermore, Covanta cites
the alternative odor sources not to establish their contributory
negligence but rather to defeat Lloyd's class-wide theory of

-19-

causation.  It credibly raises the possibility that some of
Lloyd's neighbors have misattributed their odor impact to
Covanta when in fact it was caused by a different nearby source.
Individual factfinding will surely be required to test these
allegations.

Even if there were no possible other odor sources,
odor impact will vary property-by-property.  Covanta has
identified three environmental factors that affect each
property's unique exposure to odors and necessitate extensive
individualized factfinding into damages.

First, odors dilute as they travel away from the
source.  A property at the edge of the 1.5-mile radius may
experience significantly lower concentrations of odors than one
across the street from Covanta's facility.

Second, odor impact will vary based on the direction
and speed of the wind.  Odors travel downwind from the source.
Winds fluctuate in direction and speed.  Covanta has presented
undisputed testimony from Roberto Gasparini, an air dispersion
expert, showing that the speed and direction of winds of
Conshohocken are far from constant.  Gasparini analyzes wind
speed and direction data collected at Wings Field, a general
aviation airport roughly five miles northwest of Covanta's
facility.  The contrast in wind qualities on dates where
malodors were reported is apparent.  On June 10, 2019, for

example, the winds blew largely toward the northeast at speeds
between 7 and 17 knots.  By contrast, on October 15, 2019, the
winds blew largely toward the southeast and at speeds no greater
than 11 knots.

Third, a property's topography and physical features
affect its odor impact.  Gasparini opines that odor dispersion
varies depending on a property's elevation and terrain as well
as the nearby vegetation:

> The elevation of a location relative to that
> of a source of emissions is critical as
> plumes may miss certain locations entirely.
> Buildings, vegetation, and other
> obstructions to airflow that cause
> mechanical turbulence in the air may also
> affect dispersion. When a plume travels over
> areas that heat differently (e.g., grassland
> vs. concrete vs. open water), the thermal
> characteristics of the underlying ground
> change, as does the thermally generated
> turbulence above that ground. This too
> differentially affects dispersion. With
> varied local topography, ground cover, and
> land features, it is impossible for air
> emissions to disperse uniformly in the area.

Lloyd contends that Pennsylvania nuisance law obviates
the need for individualized inquiry into these factors.  She
notes that under Pennsylvania public and private nuisance law,
whether an invasion is "offensive, seriously annoying, or
intolerable" is decided on the objective "standard of normal
persons or property in the particular locality."  Karpiak, 676
A.2d at 272-73.  Thus, as her argument goes, because the

-21-

offensiveness of an odor depends on an objective class-wide
standard, factors requiring individualized inquiry merely affect
the amount of individual damages.  She cites Neale v. Volvo Cars
of North America, LLC, for the proposition that "individual
damages do not preclude class certification under Rule
23(b)(3)."  794 F.3d at 375.

Neale does not rubber-stamp every class action where
damages are not susceptible to class-wide proof.  Complex
inquiries into individual plaintiffs' damages can still
predominate when every other issue could be proven by common
evidence.  See, e.g., Gonzalez, 317 F.R.D. at 521–22.  This is
especially the case where, as here, the plaintiff has not
identified "any method by which entitlement to damages could be
determined on a classwide basis." Id. at 522.  Covanta has
demonstrated that proximity, wind, and topography would require
extensive individual inquiry into each plaintiffs' damages
award.  Lloyd has offered no method for the court to make
class-wide findings that account for these factors.

Furthermore, Lloyd's argument misunderstands the role
that these environmental factors play in class certification.
Covanta is not arguing that proximity, wind, and topography
simply affect the amount of damages for each class member.  It
contends that some putative class members have experienced no
injury at all.  In analyzing predominance, our Court of Appeals

-22-

has distinguished between individualized inquiries into the amount of damages and the "fact of damage":

> [W]hen courts speak of "damages," they are often referring to two distinct concepts: the "fact of damage" and the measure/amount of damages. The fact of damage, often synonymous with "injury" or "impact," is frequently an element of liability requiring plaintiffs to prove that they have suffered some harm traceable to the defendant's conduct . . . . Only if the fact of damage is established does a court reach the question of remedy and the exact calculation of each plaintiff's damages. "While obstacles to calculating damages may not preclude class certification, the putative class must first demonstrate economic loss"--that is, the fact of damage--"on a common basis."

Harnish v. Widener Univ. Sch. of L., 833 F.3d 298, 305-06 (3d Cir. 2016) (internal citations omitted).

Covanta has presented compelling evidence that at times some properties in the proposed class area have experienced no odor impact at all.  As mentioned above, wind patterns around Conshohocken frequently shift.  A property that is downwind from the Covanta facility and invaded by its odors one day may be upwind and unaffected the next day.  Gasparini found that among the DEP odor complaints that included a location, nearly half originated from areas that were at the time upwind from Covanta's facility.  These types of "fact of damage" determinations tip the scale toward individual inquiry.

Lloyd cannot brush them off as merely matters affecting the measures of damages.

To be sure, some elements of Lloyd's claims can be established on a class-wide basis, including whether Covanta's odor mitigation practices were reasonable and what level of odor impact constitutes an unreasonable invasion in Lloyd's community.  On balance, however, the court finds that individualized determinations of causation, fact of damage, and extent of injury, considering the complex factors that affect odor impact, would overwhelm any common issues of Covanta's conduct.  Thus, the court finds Lloyd has not established predominance under Rule 23(b)(3).

### B. Superiority

Rule 23(b)(3) also requires that class treatment be "superior to other available methods for fairly adjudicating the controversy."  The superiority requirement weighs whether "in terms of fairness and efficiency, the merits of a class action" outweigh "those of alternative available methods of adjudication."  In re Cmty. Bank, 795 F.3d at 409.  The court must analyze the following factors:

> the class members' interest in individually controlling the prosecution of separate actions;
>
> the extent and nature of any similar litigation already commenced by class members;

> the desirability of concentrating the
> litigation in a particular forum; and
>
> the difficulties likely to be encountered in
> the management of a class action.

Id. at 408-09 (citing Fed R. Civ. P. 23(b)(3)).

Here, Lloyd's proposed class is unmanageable.  The
need for individual inquiries into causation and injury
undercuts any benefit class treatment could provide.  A proposed
class may be unmanageable because, as here, "injury
determinations must be made on an individual basis." Newton v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 191
(3d Cir. 2001), as amended (Oct. 16, 2001).  Since Lloyd cannot
establish causation or injury with class-wide proof, the court
would need to hold hearings for each individual plaintiff to
demonstrate these elements.  "There are simply too many uncommon
issues" to achieve the economies of time that class treatment is
meant to provide.  Georgine v. Amchem Prods., Inc., 83 F.3d 610,
632 (3d Cir. 1996).  Furthermore, Lloyd has not shown that the
difficulties of managing individual actions could not be
mitigated through effective case management procedures or the
application of issue preclusion.  See, e.g., id. at 634; Mays v.
Tennessee Valley Auth., 274 F.R.D. 614, 628 (E.D. Tenn. 2011).

VII

Lloyd suggests two options other than denying class
certification.  Neither is tenable.  First, Lloyd suggests by

-25-

passing reference in a footnote that the court "narrow the class" pursuant to Rule 23(c).  Lloyd, however, offers no alternative method of defining a class that meets the Rule 23(a) and (b) requirements.

Second, Lloyd argues that the court may certify an "issue class" to allow her to prove "limited issues" related to "Defendant's conduct and whether that conduct caused an off-site nuisance."  It is black-letter law that issue-only classes, permitted under Rule 23(c)(4), may be certified only if the class would otherwise satisfy the Rule 23(a) and (b) requirements.  Russell v. Educ. Comm'n for Foreign Med. Graduates, 15 F.4th 259, 266-67 (3d Cir. 2021), petition for cert. filed, (U.S. Dec. 23, 2021) (No. 21-948).  As Lloyd has not met those requirements, the court may not certify an issue class.

VIII

In sum, Lloyd's proposed class does not satisfy the Rule 23 certification requirements.  Although the court finds that Lloyd has demonstrated ascertainability, typicality, commonality, and adequacy of representation, she has not shown by a preponderance of the evidence that her proposed class satisfies numerosity, predominance, or superiority.  The court will deny Lloyd's motion for class certification.